### HORACE L. HAZELTON *vs.* HENRY ALLEN. ·

ɪn an action by the assignee of an insolvent corporation to recover the value of goods transferred by it to a preëxisting creditor in violation of law, the defendant cannot be allowed to call a witness to testify that after the failure of the corporation he first learned of the existence of certain large debts due from it, and then informed the defendant thereof, and that the defendant had no previous knowledge of the same; nor can he prove his own · acts or declarations at that time, for the purpose of showing that he then for the first time learned of such indebtedness.

If after such transfer it is mutually agreed that the corporation may take such portion of the articles transferred as any of its customers may prefer, in exchange for others to be taken by the creditor, as he may wish for them, and in pursuance of this agreement certain articles are afterwards exchanged, these facts will not prevent a recovery by the assignee for the goods originally transferred to the creditor and afterwards thus returned.

The same definition of insolvency which applies to ordinary traders is applicable also to a corporation engaged in the manufacture and sale of pianos.

An assignee of an insolvent debtor, whose books contain accounts showing that a large · amount of goods were delivered to a preëxisting creditor shortly before the failure, and a note held by the latter was given up and a balance struck, waives the right to contest the transfer of the goods as a fraudulent or illegal preference, by demanding and receiving such balance, after full opportunity of investigating the circumstances of the transaction, and after submitting the items of the account to arbitration.

TORT, by the assignee of the Brown & Allen Piano Forte Company, an insolvent corporation engaged in the manufacture and sale of pianos, to recover the value of thirteen pianos and five promissory notes conveyed by the company to the defendant as a preference, in violation of the insolvent laws of this commonwealth.

At the trial in the superior court, before *Ames*, J., it appeared that the transfer of the property to the defendant, who was a preëxisting creditor to a large amount, was made on the 8th of November 1856, and the entry of it upon the books of the company was made on the 10th of the same month; and that after the transfer was completed, it was agreed that in case the corporation should want any of the pianos taken by the defendant for customers who might prefer them, an exchange might be made, and he would take others in their place as he might wish for them; and nine of them were thus exchanged. The petition in insolvency was filed on the 12th of the following January, and the first publication of notice was on the 14th of the same month.

The defendant was one of the original stockholders of the company, and the plaintiff offered evidence to prove that he had access to the books and examined them at times, and that the books contained certain entries showing that the debts of the company were much greater than the defendant in his testimony had represented them to be. The defendant then offered to show by one Drury, who held some of the shares in the company as collateral security, that he first knew of the entries in question after the failure, and then informed the defendant of them, and that the defendant did not know of them until that time; and he further offered to prove his own acts and conduct in relation to the matter, as tending to show that he had not known it previously; but the judge rejected the evidence.

The defendant requested the judge to instruct the jury that the plaintiff, if entitled to recover at all, could not recover for the nine pianos returned; but the judge declined so to rule.

The judge instructed the jury that if the corporation at the time of the transfer to the defendant was unable to meet its payments in the ordinary course of business as traders usually do, it was insolvent, whether on winding up its affairs ther should prove to be property enough to pay all the debts or not; and that the circumstances relied upon by the defendant, which are stated in the opinion, as proofs that the plaintiff had waived all objection to the transfer, and confirmed the same, would not

have that effect, or prevent the plaintiff from recovering in this action.

The jury returned a verdict for the plaintiff, with $3896.74 damages, being the full value of all the pianos and notes claimed, with interest; and the defendant alleged exceptions.

*A. A. Ranney*, for the defendant. 1. The evidence of Drury was important and competent, as fixing the date when the defendant first learned of the large indebtedness of the company. 2. If entitled to recover at all, the plaintiff was not entitled to recover for the pianos returned to the company. 3. The definition given of insolvency, though it may be correct when applied to traders, is not applicable to a corporation engaged in manufacturing pianos for sale. It confounded different classes and branches of business. 4. The acts of the plaintiff were a waiver of objections to the transfer to the defendant, and a confirmation of it. *Snow* v. *Lang*, 2 Allen, 18. *Murray* v. *Palmer*, 2 Sch. & Lef. 486. *Benchley* v. *Chapin*, 10 Cush. 173. *Winship* v. *Bass*, 12 Mass. 199. *Ipswich Manuf. Co.* v. *Story*, 5 Met. 510.

*H. F. Durant & D. E. Ware*, for the plaintiff. 1. The ruling of the court rejecting the evidence of Drury was correct. 2. The corporation derived no benefit from the return of the nine pianos, because the defendant took others in their place. This is not a restoration. 3. The definition of insolvency was correct. 4. The acts relied on to prove a waiver of objections to the transfer, were insufficient for that purpose, unless the plaintiff at the time knew the nature of the transaction, and the circumstances attending it. *Butler* v. *Hildreth*, 5 Met. 49.

CHAPMAN, J. 1. The testimony of Drury was properly excluded. The question in controversy was, whether the defendant, at the time of his purchase of the pianos in question, and surrender of his note, on the 8th and 10th of November 1856, had reasonable cause to believe the Piano Forte Co. insolvent. They failed soon afterwards. Drury was offered to prove that he himself did not know of certain entries on their books till after their failure, and that he told the defendant of these entries after the failure. Both these facts were irrelevant and immateria.. It was also proposed that he should testify that the defendant

did not know of these entries until he told him. This is absurd; because he could not have known such a fact if it were true.

2. The instruction was right as to the amount for which the defendant would be liable, if the plaintiff should prevail. The pianos marked and set apart and charged to him on the 8th of November became his absolute property. The agreement that the company might afterwards take and sell such of them as they might choose, by replacing them with others, was a mere arrangement for future exchanges, which must be made in each case by a particular agreement as to the terms, if the defendant should require it.

3. The definition of insolvency given by the court was in substantial conformity with that contained in the cases of *Thompson* v. *Thompson*, 4 Cush. 127, and *Lee* v. *Kilburn*, 3 Gray, 594. A manufacturer of pianos has occasion to own or hire a manufactory with machinery and tools; to buy stock and materials, hire workmen, and sell his manufactured goods in market. Trade constitutes a large part of his business; and it is reasonable that the same definition of insolvency should apply to him as if his exclusive business were to buy and sell. The court correctly applied the definition to this case.

4. But the sale of pianos to the defendant, on the 8th of November 1856, to pay his preëxisting debt, if intended as a preference, and therefore void or voidable, might be confirmed by the plaintiff as assignee. *Snow* v. *Lang*, 2 Allen, 18. The act of confirmation relied on by the defendant is the following: The books of the Piano Forte Co. contain an account with the defendant. Among other items therein are a charge of the pianos, and a credit of the note given up. A balance was struck on the ledger, and carried to a new account. The new account consists of pianos credited and charged, showing apparent exchanges. A balance was again struck and carried to a new account; and this new account consists of charges and credits of pianos and stools. A balance was again struck, in which the defendant was found to be indebted in the sum of $71.36, and this balance was charged to him in a new assignee's account. This

balance the plaintiff has demanded and received, after some con- troversy as to items, which was settled by arbitration. The court ruled that the receipt of this balance was not a waiver of objections to the transfer of the pianos, and would not prevent the plaintiff from recovering their value in this suit, without fur- ther proof that the plaintiff knew all the circumstances of the transfer. We are of opinion that this ruling was erroneous In *Campbell* v. *Fleming*, 1 Ad. & El. 40, a contrary doctrine is held, and Denman, C. J. says there is no authority for holding that a party must know all the incidents of a fraud before he deprives himself of the right of rescinding. The present case is stronger than the ordinary case of delaying to rescind a con tract after the discovery of fraud. The plaintiff, as assignee of an insolvent corporation, had their books, containing an account of a large quantity of pianos sold to the defendant just before the failure, and the credit of a note, which showed that they were applied to the payment of a preëxisting debt. He could not fail to see that it was in effect a preference of the plaintiff under such circumstances that it was probably void. He knew he had a right to investigate the matter, and search the con- science of all parties by interrogations. Ordinarily a party is compelled by the circumstances of the case to decide promptly whether he will rescind the contract by restoring the considera- tion already in his possession; knowing that any further re- tention of it will be a waiver. But here the plaintiff had no consideration in his hands. It was in the form of a balance of accounts, and he could not by forbearance to collect it be said to treat it as his own. He might safely wait and take time for investigation. With the knowledge he had, we think his col- lection of the balance was an affirmation of the transactions out of which the balance resulted, and a waiver of his right to ques- tion their validity as being fraudulent against the insolvent law On this ground the exceptions are sustained.